UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ronald Colonial Johnson,<br><br>                   Plaintiff,<br><br>vs.<br><br>Ms. Nikki Haley, Governor;<br>Mark Sanford;<br>Jon Ozmint;<br>William Byars;<br>Cynthia Sanders;<br>John R. Pate;<br>Arthur Jordan;<br>McKendley Newton;<br>Mr. Pugh;<br>Ms. Priester;<br>Ms. Derrick;<br>Mr. Dukes;<br>Ms. Freeman;<br>Mr. Brunson;<br>Ms. Brown;<br>Mr. Beckwith;<br>Mr. Boggs;<br>Mr. Jordan;<br>Mr. Blanding;<br>Mr. Wackley,<br><br>                   Defendants. | C/A No. 2:12-00507-JMC-BHH<br><br><br><br><br><br><br><br><br><br>Report and Recommendation<br>for Partial Summary Dismissal |

       Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate incarcerated at Allendale Correctional Institution. Plaintiff brings this action against numerous employees of the South Carolina Department of Corrections alleging violations of 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(d) DSC, the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the district judge. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A.

For the reasons that follow, the undersigned recommends that the district judge dismiss the Complaint in this case without prejudice and without issuance and service of process as to the following Defendants: Mr. Mark Sanford; Mr. Jon Ozmint; Ms. Brown; Mr. McKendley Newton; Mr. Brunson; Ms. Priester; Mr. Dukes; Mr. Beckwith; Mr. Blanding; Mr. Boggs; and Mr. Pugh.[1]

## Factual and Procedural Background

The Complaint states that Plaintiff was transported to Kirkland Correctional Institution (KCI) on April 12, 2010. ECF No. 1, page 12. On June 1, 2010, Plaintiff was transferred to Wateree River Correctional Institution (WRCI). *Id.* at 59. Plaintiff was subsequently transferred to Allendale Correctional Institution (ACI) on February 8, 2011, where he remains to date. *Id.* at 60. The Complaint alleges numerous violations of Plaintiff's constitutional rights by employees of the South Carolina Department of Corrections (SCDC). Specifically, Plaintiff alleges cruel and unusual punishment, a violation of his right to court access, denial of the right to free exercise of religion, denial of equal protection, and denial of due process. *Id.* at 77-78.

## Standard of Review

Plaintiff filed this Complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action fails to state

---

[1] In a separately-docketed order, the undersigned has authorized service against Defendants Ms. Nikki Haley, Mr. John R. Pate, Ms. Cynthia Sanders, Mr. Arthur Jordan, Ms. Derrick, Ms. Freeman, Mr. Jordan, Mr. Wackley, and Mr. William Byars.

a claim on which relief may be granted or is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i), (ii). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B). *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N. Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990).

## Discussion

To state a claim under 42 U.S.C. §1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United Sates was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). While Plaintiff provides

sufficient factual information to withstand summary dismissal of his claims against many of the Defendants, he fails to state a cognizable § 1983 claim against the Defendants discussed below.

1. <u>Mr. Mark Sanford and Mr. Jon Ozmint</u>:

Plaintiff names Mark Sanford as the "Old Governor" of the State of South Carolina and Jon Ozmint as the "Old Director" of the South Carolina Department of Corrections (SCDC). ECF No. 1, page 7. The Complaint provides no indication that Defendants Sanford or Ozmint acted personally in the violation of Plaintiff's rights, which is a requirement to state a cognizable § 1983 claim. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). When a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. *See Karafiat v. O'Mally*, No. 02-3992, 2002 WL 31845135, at **1 (6th Cir. Dec. 17, 2002); *Curtis v. Ozmint*, C/A No. 3:10-3053-CMC-JRM, 2011 WL 635302 at *4 n.5 (D.S.C. Jan. 5, 2011). Thus, any individual capacity claims against Defendants Sanford and Ozmint are subject to summary dismissal.

Instead, Plaintiff alleges that he sent letters to these Defendants seeking assistance. ECF No. 1, pages 14, 48 [Sanford]; ECF No. 1, pages 14, 37, 45 [Ozmint]. However, Defendants Sanford and Ozmint are protected from a claim for damages in their official capacity by the Eleventh Amendment, which forbids a federal court from rendering a judgment against an unconsenting state in favor of a citizen of that state. *Edelman v. Jordan*, 415 U. S. 651, 663 (1974). State agencies and state officials share this immunity when they are the alter egos of the state. *See Regents of the University of California v.*

*Doe*, 519 U.S. 425, 429 (1997). [2] It is further noted that, since Defendants Sanford and Ozmint are no longer State officials, Plaintiff's claims for injunctive relief against these individuals are moot.[3] Thus, Defendants Sanford and Ozmint are entitled to summary dismissal from this case.

2.  Ms. Brown:

Plaintiff alleges that Defendant Brown is a Captain and Disciplinary Hearing Officer assigned to WRCI and ACI. ECF No. 1, page 9. On December 21, 2010, Plaintiff was charged with "Threatening to Inflict Harm on Someone of the Public," and placed in disciplinary detention at WRCI. *Id.* at 26. Plaintiff claims that the charge resulted from a false statement made about him by an officer. *Id.* Defendant Brown allegedly found Plaintiff guilty of the offense at a disciplinary hearing, "based on a false statement," and "gave [Plaintiff] the max on the sanctions." *Id.* at 27. *See also* ECF No. 1-2, pages 9-11 (showing that Plaintiff lost sixty (60) days of good time credit). Plaintiff filed Step 1 and Step 2 Grievances regarding the matter, however, the disciplinary conviction was upheld. ECF No. 1, page 27; ECF No. 1-2, pages 12-14.

---

[2] While the United States Congress can override Eleventh Amendment immunity through legislation, Congress has not overridden the states' Eleventh Amendment immunity in § 1983 cases. *See Quern v. Jordan*, 440 U. S. 332, 343 (1979). In addition, a State may consent to a suit in a federal district court. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 & n. 9 (1984). However, the State of South Carolina has not consented to such actions. *See* S.C. Code Ann. § 15-78-20(e).

[3] The Complaint provides no indication that Defendant Nikki Haley, current Governor of the State of South Carolina, or Defendant William Byars, current SCDC Director, acted personally in the deprivation of Plaintiff's constitutional rights. Further, any claims for monetary damages against these Defendants in their official capacity are barred by Eleventh Amendment immunity. However, Plaintiff's claims for prospective injunctive relief against Defendants Haley and Byars are not subject to summary dismissal. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)(citing *Ex parte Young*, 209 U.S. 123 (1908)).

Plaintiff alleges a violation of his right to due process by Defendant Brown. However, in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the United States Supreme Court held that a state prisoner's claim for damages is not cognizable under § 1983 where success of the action would implicitly question the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that the conviction or sentence has been previously invalidated. *Heck's* ruling was subsequently extended to a prisoner's claim for damages regarding loss of good time credits in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)(a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under §1983"). *See Edwards v. Ogunsile*, C/A No. 0:09-3319-TLW-PJG, 2011 WL 779884 at *3 (D.S.C. Jan. 24, 2011)("The rule in *Heck* applies to prison disciplinary convictions as well as criminal ones."). While *Heck* does not universally apply to all suits challenging prison disciplinary proceedings or institutional offense convictions, in situations such as Plaintiff's, where the administrative action affected credits toward release based on good time served, *Heck* bars the § 1983 claim. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004)("*Heck's* requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."). Since *Heck* applies in the instant circumstance, and Plaintiff has not shown that his institutional conviction and sentence have been invalidated, his due process claim

is barred by the holdings in *Heck* and *Edwards*. Therefore, Defendant Brown is entitled to summary dismissal from this case.[4]

3.   Mr. McKendley Newton:

Defendant Newton is identified as the Associate Warden of ACI. ECF No. 1, page 8. Plaintiff complains that his cell at ACI had no place to hang wet towels, and that inmates at ACI would put mattresses at their cell doors to prevent "being gassed" in their sleep. *Id.* at 54. Defendant Newton allegedly distributed a memorandum which warned inmates that they would be "charged" for putting up "any kind of clothesline" and that placement of a mattress at the cell door could result in an inmate's loss of such mattress for up to one year. *Id.* It is unclear from the pleading how the information contained in Defendant Newton's alleged memorandum would violate Plaintiff's rights. In any event, Plaintiff provides no indication that he was ever disciplined for hanging a clothesline or placing his mattress in front of the cell door. Thus, Plaintiff fails to demonstrate a violation of his constitutional rights by Defendant Newton's distribution of the memorandum. As such, this Defendant should be summarily dismissed from this case.

4.   Mr Brunson:

The Complaint names Defendant Brunson as an SCDC staff member holding the position of Institutional Grievance Coordinator. ECF No. 1, page 11. Plaintiff complains that Defendant Brunson denied institutional grievances filed by Plaintiff and/or refused to

---

[4] It is noted that the Complaint discusses a "contraband officer Brown" who allegedly took some of Plaintiff's property at WRCI. ECF No. 1, page 22. However, contraband officer Brown, who is not listed in the Complaint's caption, parties section, or in Plaintiff's service documents, appears to be a different individual from Ms. Brown, disciplinary hearing officer.

process Plaintiff's grievances. *Id.* at 14, 36, 52-53. However, inmates have no constitutionally protected right to a grievance procedure. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Daye v. Rubenstein*, No. 10-6938, 2011 WL 917248 at *2 (4th Cir. March 17, 2011). *See also Blagman v. White*, 112 F. Supp. 2d 534, 542 (W.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure); *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)("[A] prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Therefore, Plaintiff's claims against Defendant Brunson, for denying or refusing to process Plaintiff's grievances, are not cognizable under 42 U.S.C. § 1983. As such Defendant Brunson is entitled to summary dismissal from this action.

5. <u>Ms. Priester and Mr. Dukes</u>:

The Complaint names Defendant Priester as the Laundry Director for ACI. ECF No. 1, page 11. Defendant Dukes is listed as the ACI Food Service Director. *Id.* In regards to Defendant Priester, Plaintiff alleges that his "whites, sheets, uniforms, etc." were all "filthy with dirt caked in them." *Id.* at 60. Plaintiff states that he "put in a request to Ms. Priester the Laundry Director around 2/18/11 and never got a response." *Id.* Plaintiff also complains of being denied a pillow at ACI. *Id.* at 67-68. Plaintiff again alleges that he put in a request for a pillow to Defendant Priester, but received no response. *Id.* at 68. Plaintiff's claims against Defendant Dukes stem from alleged food issues at ACI. On February 10, 2011, Plaintiff states that he put in a request to Defendant Dukes due to an alleged denial of salt. *Id.* at 19. Plaintiff claims that the request was never answered. *Id.* Plaintiff also indicates that put in a request to Defendant Dukes on February 12, 2011, regarding cold and insufficient food portions, *id.* at 30-31, but again received no answer.

On April 3, 2011, Plaintiff alleges that Defendant Dukes allowed spoiled milk to be served to inmates. *Id.* at 33. Plaintiff claims that such treatment constitutes cruel and unusual punishment.

As a general matter, the Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)(quoting *Gregg v. Georgia*, 428 U.S. 153, 173(1976)). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978),(overruled on other grounds by *Bell v. Wolfish*, 441 U.S. 520 (1979)). *See also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337,349 (1981). Further, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. *See also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.1995); *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir.1990).

"In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements-that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d at 166(quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993)). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003). "[T]o demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury

9

resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (internal quotation marks and citation omitted). *See also White v. Gregory*, 1 F.3d 267, 269 (4th Cir.1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.").

In the present case, Plaintiff alleges that he has been denied a pillow and clean sheets and clothing. Plaintiff also alleges that meals are often served cold, with less than adequate food portions, and no salt. However, the Complaint provides no indication that Plaintiff has been intentionally denied food, clothing or any other basic human need. Further, while Plaintiff claims that wearing dirty clothes was humiliating, that denial of a pillow resulted in many nights of lost sleep, and that denial of salt caused Plaintiff to suffer heartburn, the Complaint provides no facts to demonstrate that the actions of Defendants Priester and Dukes caused any serious or significant injury to Plaintiff. ECF No. 1, pages 30, 60, 68. As Plaintiff's Complaint fails to establish a cognizable Eighth Amendment claim of cruel and unusual punishment against Defendants Priester and Dukes, these Defendants are entitled to summary dismissal from this case.

6.  <u>Mr. Blanding and Mr. Beckwith</u>:

Defendant Blanding is identified as an Associate Warden at WRCI. ECF No. 1, page 9. Defendant Beckwith is listed in the Complaint as the Warden of WRCI. *Id.* at 8. Plaintiff claims that he talked to Defendant Blanding on January 16, 2011, and, January 29, 2011, regarding the alleged destruction of Plaintiff's legal file by Sergeant Wackley. *Id.* at 16. Defendant Blanding indicated that he would "look into" the matter, but failed to do so. *Id.*

10

Plaintiff also states that he submitted a request to Defendant Beckwith about Sergeant Wackley's actions, however, the request was not answered. *Id.* at 17-18. Plaintiff further alleges that he spoke to Defendant Blanding on January 16, 2011, about an alleged denial of "adequate heating/cooling system, clean ventilation, clean showers, and clean drinking water" at WRCI. *Id.* at 56-57. Plaintiff claims that he put in a request to Defendant Beckwith around January 10, 2011, regarding these issues. *Id.* at 57. Defendant Beckwith did not answer the request and Defendant Blanding allegedly stated that he would "handle" the issues, but failed to do so prior to Plaintiff's transfer to ACI. *Id.* Plaintiff also claims that Defendant Beckwith failed to respond to requests Plaintiff submitted regarding dirty laundry at WRCI. *Id.* at 59.

Liberally construed, Plaintiff may be attempting to state a claim of deliberate indifference to health and/or safety against Defendants Blanding and Beckwith. Deliberate indifference is a very high standard, which requires more than a showing of mere negligence. *See Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976). Deliberate indifference also requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). *See also Farmer v. Brennan*, 511 U.S. 825, 835-836 (1994). In *Grayson v. Peed*, the Fourth Circuit Court of Appeals stated, "the Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-696 (4th Cir. 1999). The failure of Defendants Blanding and Beckwith to answer Plaintiff's requests to staff, or "look into" issues brought to their attention, does not rise to the level of deliberate indifference to Plaintiff's health or safety. At best, Plaintiff may be alleging a claim of negligence, which is not actionable under 42 U.S.C. § 1983. *See*

*Daniels v. Williams*, 474 U.S. 327, 328-336 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-348 (1986); *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995)(*Daniels* bars an action under § 1983 for negligent conduct); *Ruefly v. Landon*, 825 F.2d 792, 793-794 (4th Cir. 1987). Therefore, Defendants Blanding and Beckwith[5] should be summarily dismissed from this case.

7. <u>Mr. Pugh and Mr. Boggs:</u>

Defendant Pugh is identified in the Complaint as a correctional officer holding the rank of Captain at WRCI. ECF No. 1, page 10. Defendant Boggs is listed in the Complaint as a Major at WRCI. *Id.* Plaintiff alleges that Defendant Pugh was the supervisor of an officer that refused to properly "do his rounds" or bring Plaintiff "tylenol" when he was sick. *Id.* at 20. Plaintiff complained to Defendant Pugh about the officer's behavior to no avail. *Id.* The Complaint alleges that Defendant Pugh refused to believe Plaintiff's claims about the officer's poor job performance and that Defendant Pugh handled the situation "wrongly." *Id.* at 20, 55. The Complaint's claims against Defendant Boggs stem from Plaintiff's request for a legal file, while housed in the WRCI Special Management Unit (SMU). *Id.* at 15. Defendant Boggs allowed Plaintiff one legal folder, however, Plaintiff alleges that the legal paperwork formerly contained in the folder was missing. *Id.* Plaintiff blames the confiscation of the paperwork on Sergeant Wackley, but alleges that Defendant Boggs

---

[5] Plaintiff's alleges that "[i]t was said" that Defendant Beckwith "had it set up so that [Plaintiff] would have to say in lock-up." ECF No. 1, page 26. However, this allegation is too speculative to state a cognizable § 1983 claim. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996)("Specificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations").

allowed that individual access to Plaintiff's legal files.[6]  *Id.* at 16.  Thus, Plaintiff alleges claims of supervisory liability against these two Defendants.

A § 1983 claim for supervisory liability cannot rest on the doctrine of respondeat superior. *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir.1999). However, supervisory officials may be held liable, in some circumstances, for constitutional injuries inflicted by their subordinates, if certain criteria are established. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). A plaintiff must show that the supervisory official was (1) actually or constructively aware of a risk of constitutional injury, (2) deliberately indifferent to that risk, and (3) that an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Carter v. Morris*, 164 F.3d at 221. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799 (citing *Slakan v. Porter*, 737 F.2d 368, 373-74 (4th Cir. 1984)).  "Ordinarily [a plaintiff] cannot satisfy this burden of proof by pointing to a single incident or isolated incidents." *Slakan,* 737 F.2d at 373. The Complaint alleges that Plaintiff complained about an officer's job performance to Defendant Pugh, who talked to that officer and made a determination that Plaintiff's allegations were untrue.  Plaintiff further alleges that he asked Defendant Boggs to deny Sergeant Wackley, who allegedly destroyed Plaintiff's legal material, access to his files. However, the Complaint presents insufficient factual allegations to demonstrate that these Defendants were aware of any pervasive or

---

[6]  Defendant Boggs is also mentioned as an officer who asked Plaintiff why he was not eating his food on December 27, 2010.  Plaintiff stated that he needed salt, and Defendant Boggs indicated that he had no control over the food provided.  ECF No. 1, page 18.

unreasonable risk of constitutional injury to Plaintiff, or deliberately indifferent to any such risk. Therefore, Defendants Pugh and Boggs are not liable in their capacity as supervisors and the claims against them should be summarily dismissed.

## Conclusion

Accordingly, it is recommended that the district judge dismiss the Complaint in the above-captioned case *without prejudice* as to Defendants Mr. Mark Sanford, Mr. Jon Ozmint, Ms. Brown, Mr. McKendley Newton, Mr. Brunson, Ms. Priester, Mr. Dukes, Mr. Beckwith, Mr. Blanding, Mr. Boggs, and Mr. Pugh.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

April 9, 2012
Charleston, South Carolina

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).